I .BROWN, C.J.,
Plaintiff, Brenda Halley, instituted this action in July 1992 against the Sheriff of Union Parish, Bob Buckley, to recover damages for the alleged mishandling of a judicial sale. Sheriff Buckley filed a motion for summary judgment which was granted by the trial court. We affirm.

Factual and Procedural Background

On January 29, 1991, Brenda Halley obtained a judgment from the Fourth Judicial District Court in Ouachita Parish against her ex-husband, Bill Halley, in the amount of $177,486.87. After that decree had been made executory, a writ of fieri facias directed that certain movable and immovable property be seized by the Sheriff of Union Parish. In executing that order, the sheriff took possession of the residence owned by Mr. Halley in Farmer-ville, Louisiana, and offered the property for public sale on July 24,1991.
In preparation for the judicial sale, the sheriffs office obtained a mortgage certificate which disclosed that a collateral mortgage affecting the property had been executed on October 28, 1988, and recorded in the records of Union Parish on November 29, 1988, more than two years prior to the rendition and filing of Mrs. Halley’s judgment. A collateral mortgage note due on demand and payable to the order of “myself’ was executed on the same date and paraphed “ne-varietur” to identify it with the mortgage.
*952 On the day of the sale, a representative of D’Arbonne Bank appeared and informed the officer conducting the sale, Chief Civil Deputy Lottie Ray, that the bank held the collateral mortgage with a pay-off balance of $213,566.67. At the auction, Peter Branch, Mr. Halley’s son-in-law, | {¡purchased the property on a bid of $222,315.86. He later paid an additional $6,669.45 in costs.
Before the disbursal of any sale proceeds, the sheriff received a letter from the bank confirming that it was the “mortgage holder of record regarding Bill G. Halley” and entitled to the $213,566.67 pay-off. Deputy Ray advised Ms. Halley’s attorney that the bank would be paid first and that no remaining amount would be available to liquidate her judgment.
On August 13, 1991, the sheriff paid the indicated mortgage balance to the bank from sums received from Mr. Branch. Finally, after the satisfaction of commissions and costs, Ms. Halley received $8,311.65 through the clerk of court.
Although she attended the judicial sale, Ms. Halley did not bid on the property, nor at any time prior to or after the sale did she seek to formally challenge the validity, priority, ownership, or outstanding balance of the mortgage asserted by the bank. Ms. Halley filed the instant suit on July 24, 1992, naming only the sheriff as defendant. Shortly thereafter, she amended her petition to name Mr. Branch, the bank, and James A. Hobbs, her ex-husband’s attorney, as defendants upon allegations that these parties and the sheriff conspired to deny her property rights and equal protection of the law.
' On July 12, 1995, Ms. Halley filed a motion for summary judgment. This motion was denied on March 13, 1996. Ms. Halley filed another motion for summary judgment on February 15, 2002, upon which a ruling was never made. On June 14, 2002, defendants filed an opposition to Ms. Halley’s motion for summary judgment as well as their own cross-motion | of or summary judgement. On September 9, 2002, the trial court granted Sheriff Buckley’s motion for summary judgment.

Discussion

A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). When a motion for summary judgment has been filed, the adverse party may not rest on the mere allegations of his pleadings, but, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Row v. Pierremont Plaza, L.L.C., 35,796 (La.App.2d Cir.04/03/02), 814 So.2d 124.
A collateral mortgage is not a “pure” mortgage; instead, it combines the security devices of mortgage and pledge into one. The collateral mortgage does not directly secure a debt; rather, the collateral mortgage device is designed to create a mortgage note for a fictitious debt that can be pledged as collateral security for a real debt. The borrower’s mortgage secures a fictitious collateral mortgage note, then- pledges that note as security for a debt, usually represented by a separate hand note. The collateral mortgage was designed to create a mortgage note that can be pledged as collateral security for either a pre-existing debt, for a debt created contemporaneously with the mortgage, for a future debt or debts, or for a series of debts. Diamond Services Corp. v. Benoit, 00-0469 (La.02/21/01), 780 So.2d 367. The advantage to creditors is that a collateral | ¿mortgage takes its rank and priority *953 from the time it became effective as to third parties, that is, from the date of the original pledge of the collateral mortgage note (assuming the mortgage has been recorded), rather than from the date of the individual subsequent advances. La. R.S. 9:5551; Diamond Services Corp, supra; Liberty Bank and Trust Co. v. Dapremont, 02-1504 (La.App. 4th Cir.02/11/03), 844 So.2d 877.
Ms. Halle/s suit against the sheriff alleges improprieties in the sheriffs sale. She argues that because the bank did not judicially intervene to assert the previously inscribed mortgage, her judgment should have been fully satisfied from the judicial sale proceeds. She also argues that the bank did not produce any evidence of the sums actually advanced to Mr. Halley.
La. C.C.P. art. 2337 mandates that the property at a judicial sale not be sold unless the prevailing bid is adequate to discharge any mortgage or security interests superior to that of the seizing creditor. Moreover, the purchaser is required to pay the sheriff only that portion of the price exceeding the amount of any such mortgage or lien. La. C.C.P. art. 2374.
La. C.C.P. art. 1092 provides that a third party “claiming ownership of, or a mortgage or a privilege on, property seized may assert his claim by intervention.” (Emphasis added.) Such an intervention is an optional procedure which, if not exercised, will not operate as a release of the mortgage or privilege. See First State Bank v. Wilson, 437 So.2d 968 (La.App. 2d Cir.1983); Davis-Wood Lumber Co. v. DeBrueys, 200 So.2d 916 (La.App. 1st Cir.1967); Hibernia Homestead and Savings Association v. Fletcher, 181 So.2d 815 (La.App. 4th Cir.1966).
| .^Furthermore, La. C.C.P. art. 2337 implicitly requires that the sheriff determine the amount of any superior mortgage or lien before permitting the sale to proceed. In the present case, the sheriff had a mortgage certificate from the clerk of court’s office and information provided by the bank prior to the. sale. Thereafter, and before release of the proceeds, the bank confirmed that declaration in writing.
During the three-week period prior to disbursal of funds, plaintiff faded to challenge either judicially or with the sheriff the validity, priority, or asserted balance of the mortgage. Neither plaintiffs petition nor answer to the summary judgment motion assert evidence concerning the invalidity or inferiority of the previously recorded collateral mortgage, or the incorrectness of the pay-off quoted by the bank. During the ten years of this litigation, plaintiff has sought nothing relating to how the bank obtained the collateral mortgage note or any advances made to Mr. Halley.
The sheriff does acknowledge a failure to follow literally the procedures of La. C.C.P. art. 2374, which would permit the purchaser (in this case Peter Branch) to retain those sums sufficient to satisfy any superior security interests. Instead, the sheriffs office required payment of the entire amount of the bid and directly paid the outstanding lien. Nevertheless, even if the purchaser had paid to the sheriff only the portion of his bid exceeding the mortgage, it is difficult to understand how this would have- caused any additional recovery by Ms. Halley. Therefore, she has demonstrated no loss or damages resulting from the procedural non-conformities concerning La. C.C.P. art. 2374. Ms. Halley has not presented any evidence reflecting the | (¡sheriffs participation in any conspiracy, nor has she presented factual support demonstrating that she can satisfy her burden of proof at trial against the sheriff. Thus, no material disputed facts exist and the sheriff is entitled to judgment as a matter of law.
*954 Ms. Halley has simply not shown any prejudice in the manner in which the sheriff conducted the sheriffs sale, which she not only instituted but also attended. Ms. Halley was aware of the bank’s claim of a superior mortgage on the seized property and made no effort to enjoin the sale or the distribution of proceeds therefrom.[1] For reasons previously stated, she has not shown a genuine issue of material fact, that is, she has failed to offer any evidence to prove the essential elements of her case.

Conclusion

For the reasons stated herein, we affirm.
AFFIRMED.

. This case does not involve whether the assertions of the bank were, in fact, correct.