DOMENGEAUX, Chief Judge.
Plaintiffs, Mr. and Mrs. Joseph Rhodes, filed suit against Gulfco Finance Company of Lake Charles for the return of excess funds received in an executory proceeding and for damages for the tortious conversion of those funds. In a related action, plaintiffs filed suit against the sheriff of Calcasieu Parish who conducted the execu-tory proceeding. The suits were consolidated, and during the trial, the trial judge dismissed both defendants pursuant to an exception of no right of action which he noticed on his own motion. Plaintiffs appealed the dismissal of Gulfco, and this court reversed and remanded, holding that the trial court erred in finding that the Rhodes had no right of action against Gulf-co for surplus monies from the sale of the mortgaged property. See Rhodes v. Gulfco Finance Co., 576 So.2d 1078 (La.App.3d Cir.1991). Plaintiffs did not appeal the dismissal of the sheriff; therefore, that judgment has become final, and the sheriff is no longer a party to these proceedings.
Upon remand, a bench trial was held, and the trial judge ruled in favor of the plaintiffs. He awarded $13,581.80 as the recovery of excess funds and $7,500.00 in general damages. The trial judge denied Gulf-co’s reconventional demand for additional monies due by the plaintiffs. Gulfco has appealed, raising several issues, and plaintiffs answered the appeal, requesting an increase in the award of general damages.
FACTS
On April 17, 1980, plaintiffs borrowed $20,400.00 from Gulfco, which debt was evidenced by a promissory note identified as 40515-9, and secured by a mortgage on certain movable and immovable property. The mortgaged property consisted of three pieces of real estate and numerous house *1075 hold goods. The mortgage was dated April 17, 1980, and was numbered 1606686.
On April 18, 1980, plaintiffs borrowed another $20,400.00 from Gulfco, which debt was evidenced by a promissory note identified as 40514-2, and secured by a mortgage on two other pieces of real estate and the same household goods listed in the previous mortgage. This mortgage was dated April 18, 1980, and was numbered 1606013.
The three pieces of real estate which were mortgaged by number 1606686 and which secured loan no. 40515-9 were sold in 1981 and 1982, and the properties were released from the mortgage. Plaintiffs paid to Gulfco a portion of the proceeds, although the exact amount is not disclosed in the record, and Gulfco applied this money, in part, to loan no. 40515-9. Gulfco also applied some of this money to another loan, no. 40242-0 which dated back to 1977, and to loan no. 40514-2. The record indicates that the mortgaged movable property was also released from both mortgages 1606686 and 1606013, although the date and reason for such release are not evident in the record. In any event, by July of 1982, loan no. 40515-9 was unsecured, and loan no. 40514-2 was secured by a mortgage on two pieces of real estate.
On July 30, 1982, Gulfco filed a petition for executory process, seeking to foreclose on the two remaining mortgaged properties described in mortgage no. 1606013. Apparently by mistake, Gulfco attached to its petition the promissory note dated April 17, 1980, evidencing loan no. 40515-9, which was by that time an unsecured debt. The amount sued for in the executory proceeding, however, corresponds to the amount owed on loan no. 40514-2, $10,180.48, which figure is included on a pay off worksheet attached to Gulfco’s ledger for loan no. 40514-2.
Plaintiffs did not assert any defenses to the executory proceeding; they did not seek to enjoin the seizure and sale, nor did they appeal the order directing the issuance of the writ of seizure and sale. After the property was sold for the net sum of $21,086.80, plaintiffs simply tried to collect the excess proceeds informally from Gulfco and the sheriff. Gulfco refused to turn over the excess proceeds to the plaintiffs, contending that the funds were applied to the remaining balance on loan no. 40515-9.
This suit followed. Plaintiffs sought $7,805.60 as the amount in excess of $10,-180.48, plus interest and attorney’s fees, which was the amount prayed for in the executory proceeding. Not until this case was tried pursuant to this court’s remand in 1991 did the parties and the trial judge realize that the executory proceeding forced the seizure and sale of mortgaged property which secured a debt other than the debt described in the petition. The trial judge was troubled by this discrepancy and criticized the carelessness of Gulfco’s record keeping practices.
Ultimately, the trial judge determined that the proper recovery from the executo-ry proceeding should have been $7,505.23, which was alleged to be the outstanding balance owed on loan no. 40515-9, the loan described in and attached to the petition. The trial judge mentioned, but did not rely on the fact that the seized property secured loan no. 40514-2. The trial judge did not include interest and attorney’s fees as part of the amount which should have been given to Gulfco after the seizure and sale were completed.
ANALYSIS
The case of First Guaranty Bank v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834, on rehearing, (La.1988), was a deficiency judgment case wherein the Supreme Court refused to allow a debtor to assert as a defense a minor procedural defect in the preceding suit for executory process. The court cited La.C.C.P. art. 2642 and stated that the proper procedures for objecting to executory process are appeal and injunction; in certain limited circumstances, the sheriff’s sale may be annulled in a subsequent direct action for nullity. The court gave the following explanation for this rule:
[I]f the assertion is that any defense which could have been raised in the exec-utory proceeding may be urged in the *1076 deficiency action because the deficiency action is based upon, a part of, or a continuation of the executory proceeding, this reasoning is also fallacious. The deficiency judgment action, although related to the executory proceeding, is established by the legislated law as a separate and independent proceeding, different in concept and purpose, involving different kinds of procedure, evidence and defenses.
529 So.2d at 843. The court went on to explain the proper allegations which may be asserted in defense of a deficiency judgment action:
The debtor, on the other hand, may assert both negative and affirmative defenses against the deficiency judgment action. He may defend by demonstrating the creditor’s failure to prove one of the aforementioned elements of his case or by rebutting the existence of such an element. Additionally, the debtor may assert that an obligation is null, or that it has been modified or extinguished, but in such a case the debtor must prove the facts or acts giving rise to the nullity, modification, or extinction. La.C.C. art. 1831; La.C.C.P. art. 1005.
529 So.2d at 842. Following the Baton Rouge Petroleum case, the Second Circuit has held that a creditor may assert the defense of setoff in a deficiency judgment action even though he failed to raise such a defense in the executory proceeding. La. Association for the Blind, Inc. v. Robertson, 552 So.2d 580 (La.App.2d Cir.1989).
The case before us is not a deficiency judgment action; it is, however, related to an executory proceeding in the same way that a deficiency judgment action is. The plaintiffs cannot assert, in this separate action, minor procedural defects in an attempt to invalidate the sheriff's sale. But they can submit proof of facts which evidence a modification or extinction of their debts to Gulfco. In the executory proceeding, Gulfco contended the plaintiffs’ debt was in excess of $21,086.80. Now, in this proceeding, the plaintiffs contend that debt has been modified to a certain extent. Plaintiffs quantified in their petition the excess funds recovered in the sheriff’s sale as $7,805.60, which is the amount left over from the proceeds of the sale after subtracting the amount prayed for by Gulfco in its executory process petition. Plaintiffs later amended their petition, seeking the recovery of excess funds in the amount of $14,199.13.
The burden of proof rests with the plaintiffs to show by a preponderance of the evidence that their debt to Gulfco has been reduced. See Moore v. Louisiana Bank & Trust Co., 528 So.2d 606 (La.App.2d Cir.1988), writ denied, 531 So.2d 269 (La.1988). In accordance with their amended petition, the plaintiffs must prove that Gulfco now owes them $14,199.13. In an effort to prove this figure, the plaintiffs offered evidence of the amount recovered in the sheriff’s sale and the amount paid to Gulfco. In documentary evidence, the plaintiffs showed that they had been sued at least three times by Gulfco for $6,887.67, allegedly the outstanding debt owed on the loan dated April 17, 1980. Each suit was by ordinary process and was dismissed for unknown reasons. Plaintiffs also proved that the three pieces of property identified in mortgage no. 1606686 had all been sold and released from the mortgage, but the plaintiffs did not prove how much of the proceeds were paid to Gulfco and credited to them.
The plaintiffs called as a witness Ted Gilcrist, the former manager of Gulfco’s Lake Charles office who handled the plaintiffs’ loans. He testified that after the foreclosure suit was filed, seeking $10,-180.48 plus interest and attorney’s fees, he “refigure[d] the pay off ... [a]nd it was reduced to $7,505.23.” Gilcrist did not indicate which loan he was talking about nor did he point out the mistake in the evidence attached to the executory process suit. Finally, Gilcrist testified that at the time of the sheriff’s sale, Gulfco had no other outstanding judgments against the plaintiffs.
One of the plaintiffs, Audrey Rhodes, testified that she and her husband borrowed $40,800.00 from Gulfco in April of 1980 for the purchase of real estate. Mrs. Rhodes was told that two equal loans of *1077 $20,400.00 would have to be made so that Gulfco could “sell one loan to someone else.” This testimony was not objected to and was not explained, corroborated, or refuted by Gulfco. Mrs. Rhodes had no record of the payments made on these loans. She said that she sometimes paid by check or by cash and she made some lump sum payments. She said that Ted Gilcrist told her in April of 1982 that only $7,000.00 was owed on their loans. Yet in May of 1982, Mrs. Rhodes sold to her son, by assumption, the property which was later foreclosed upon; the assumption deeds stated that the notes which were secured by the mortgaged property had balances of $14,236.91 and $17,340.00, which figures included accrued interest and other charges for the life of the loans.
In its defense, Gulfco presented the oral testimony of Earl Normand, a home office employee, and certain documentary evidence. Normand explained the ledger sheets which were kept on three of the plaintiffs’ loans and showed all payments and credits on each loan. The figures on these ledger sheets for April of 1982 correspond to the balances owed as indicated on the assumption deeds identified by Mrs. Rhodes and submitted into evidence by the sheriff. Normand also testified as to the credits given on each loan when the mortgaged properties which secured loan no. 40515-9 were released, but the credits he testified to ($10,452.00) do not correspond to the amounts received by the plaintiffs in the sale of the mortgaged property ($8,000.00 and $10,500.00), Neither the plaintiffs nor Gulfco proved how much Gulfco received in these transactions.
After reviewing the oral testimony and documentary proof included in the record, including Gulfco’s ledger sheets and pay off worksheets, we conclude that $10,-180.48 was owed on loan no. 40514-2 at the time the executory proceeding was filed. Concerning loan no. 40515-9, we are unable to calculate the amount owed because of numerous discrepancies in the record. First, the plaintiffs suggested and Gulfco did not dispute that loan no. 40515-9 was sold to a third party. Second, loan no. 40515-9 was an unsecured debt; the revenues received from the sale of the property which had secured the debt may not have been fully credited to the plaintiffs. Third, three suits which Gulfco filed against the plaintiffs to collect on loan no. 40515-9 were all dismissed; each suit was for the sum of $6,887.67, yet Gulfco orally represented to the plaintiffs during the same time period that $7,505.23 was owed.
The evidence of the amount owed on loan no. 40514-2 was undisputed. The plaintiffs did not prove any facts — any acts, payments, releases, or credits — which give rise to the nullity, modification, or extinction of the debt evidenced by loan no. 40514-2. Furthermore, the mortgaged property sold in the executory proceeding secured loan no. 40514-2, not loan no. 40515-9, so the amount due on the latter should not be considered as part of the amount recoverable by executory process. For these reasons, we find that the amount sought in the executory proceeding, $10,-180.48, which was the amount ordered satisfied by the issuance of the writ of seizure and sale, is the proper amount, with interest and attorney’s fees, which should have been recovered by Gulfco in the executory proceeding.
On the other hand, we find the evidence of the amount owed on loan no. 40515-9 was both conflicting and unreliable. The plaintiffs were unable to prove what they had paid on this loan, and Gulfco was unable to prove how much was owed, if anything, in support of their reconven-tional demand. Therefore, we must necessarily conclude that Gulfco could not withhold the excess proceeds recovered by exec-utory process in satisfaction of a debt that has not been adequately proved. By doing so, Gulfco has tortiously converted property which belongs to the plaintiffs. See Lincecum v. Smith, 287 So.2d 625 (La.App. 3d Cir.1973), writ denied, 290 So.2d 904 (La.1974).
We calculate as follows the amount of excess proceeds which Gulfco tortiously withheld from the plaintiffs:
*1078 [[Image here]]
The final question before us is the award of damages to the plaintiffs for Gulfco’s tortious conversion of their money. The trial court awarded damages of $7,500.00. The plaintiffs answered Gulf-co’s appeal, asking for an increase in the general damages award. The record reveals the plaintiffs were delinquent on their debts to Gulfco from the outset. They chose not to defend or appeal the executory proceeding, which action could have averted the subsequent problems. The plaintiffs have not proven damages worth $15,000.00 and we deny their request for an increase. In fact, had Gulfco appealed the $7,500.00 award and asked for a reduction, we may well have granted it, given the circumstances of this case.
DECREE
For the foregoing reasons, the judgment of the trial court in favor of plaintiffs, Mr. and Mrs. Joseph Rhodes, and against the defendant, Gulfco Finance Company of Lake Charles, is amended, and as amended, affirmed. It is ordered, adjudged and decreed that there be judgment in favor of the plaintiffs in the amount of $14,893.99, together with legal interest from the date of judicial demand until paid. That portion of the trial court’s judgment dismissing Gulfco’s reconventional demand is affirmed. Costs of this appeal are assessed to Mr. and Mrs. Joseph Rhodes.
AFFIRMED, AS AMENDED.